Ronald SKIPWORTH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 74–1212.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Sept. 20, 1974.

Decided Jan. 31, 1975.

Robert E. J. Curran, Walter S. Batty, Jr., Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Ronald Skipworth, pro se.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from a denial of a prisoner's pro se petition under 28 U.S.C. § 2255 to vacate two consecutive five-year sentences which were imposed after revocation of probation.

On February 5, 1969, petitioner was tried before a jury and found guilty of violating two federal narcotics statutes, 26 U.S.C. §§ 4704(a) and 4705(a).[1] On April 1, 1969, the district court judge suspended imposition of sentence and imposed a two-year probationary term for each offense, the two terms to run concurrently. Five days prior to the expiration of the terms of probation, on March 25, 1971, the district court judge granted an ex parte extension of the period of probation for one year. In so acting, he was following the advice of the Probation Office, which had recommended such an extension on March 22.

The basis for the Probation Office's recommendation and for the action taken by the trial judge was the fact that since being placed on probation, the petitioner had been arrested on seven occasions by the Philadelphia police for narcotics violations. At the time of the Probation Office's recommendation, the petitioner had been adjudged not guilty or the charges had otherwise been dismissed with respect to four of the seven arrests. Charges arising out of the remaining three arrests were still pending and were not scheduled for further court action until April 19, 1971, which was after the date on which the original probationary terms were scheduled to expire. In December of 1971, three months before the extension of probation would have expired, the petitioner was arrested for violation of the terms of his probation. Following a hearing on January 7, 1972, at which the petitioner was represented by counsel, the district court revoked probation and sentenced him to two consecutive five-year sentences.

■■■ The petitioner challenges his sentencing on a number of grounds, but

1. § 4704—Packages

(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

§ 4705—Order forms

(a) General requirement.—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate.

we believe that only one of them deserves lengthy discussion.[2] At the heart of the petitioner's case is the question of whether the one-year ex parte extension of probation was valid. If it was not, he argues, then the subsequent revocation and sentencing were likewise invalid. The petitioner challenges the extension on the ground that Fed.R.Crim.P. 43[3] required his presence at the time the trial judge granted the extension. For this argument to have merit, however, the extension of probation would have to be considered an "imposition of sentence," and we cannot so hold. Courts in other contexts have clearly established that placing a defendant on probation does not constitute an "imposition of sentence," but rather merely delays sentencing. See, e. g., United States v. Fultz, 482 F.2d 1 (8th Cir. 1973); United States v. Fried, 436 F.2d 784 (6th Cir.), cert. denied, 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 714 (1971); Zaroogian v. United States, 367 F.2d 959 (1st Cir. 1966); Bartlett v. United States, 166 F.2d 928 (10th Cir. 1948). Furthermore, we agree with the Government that if the initial imposition of probation does not constitute the imposition of sentence, then neither can the extension of probation.[4]

A much more troublesome question is whether the due process clause requires that a probationer be given notice and a right to a hearing before any order granting an extension of probation is entered. This is a novel question, and the only federal case we have found which is directly on point, United States v. Freeman, 160 F.Supp. 532 (D.D.C.1957), aff'd on other grounds 103 U.S.App.D.C. 15,

---

**2.** The other two contentions raised by the petitioner are clearly without merit. He first contends that his conviction on two separate counts of violating 26 U.S.C. § 4704(a) and 26 U.S.C. § 4705(a) violated the double jeopardy clause and constituted the type of pyramiding of sentences condemned in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). However, in Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Supreme Court specifically rejected the argument that the *Prince* rule was applicable to convictions under these very same statutes. Unlike the statute involved in *Prince*, where it was unclear whether Congress intended to create two separate offenses, the court in *Gore* found that Congress did clearly demonstrate such an intent with respect to § 4704(a) and § 4705(a). See also Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); United States v. Brisbane, 239 F.2d 859 (3d Cir. 1956).

The petitioner's final contention is that his conviction under 26 U.S.C. § 4705(a) is unconstitutional because that section, prohibiting the sale of narcotics except pursuant to an official order form obtained by the buyer, was violative of his privilege against self-incrimination under Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). However, in Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), the Supreme Court specifically rejected this argument and held that *Leary* does not invalidate convictions under § 4705(a).

**3.** Fed.R.Crim.P. 43 provides in pertinent part:

The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and *at the imposition of sentence,* except as otherwise provided by these rules. . . . (Emphasis added.)

**4.** We also believe that our result here is not inconsistent with Tanner v. United States, 493 F.2d 1350 (5th Cir. 1974), or Caille v. United States, 487 F.2d 614 (5th Cir. 1973). In those two cases, the Court of Appeals for the Fifth Circuit sustained challenges under Rule 43 to ex parte proceedings in which the trial judge had added a mandatory special parole term to the sentence previously imposed. In each case, the trial judge had sought to rectify his failure at the original sentencing to heed the requirement of 21 U.S.C. § 841(b)(1)(A), the relevant statute, that "[a]ny sentence imposing a term of imprisonment under this paragraph shall . . . impose a special parole term of at least three years in addition to such term of imprisonment . . .."

The statutory language in § 841(b)(1)(A) thus clearly considers the parole term to be part of the sentence imposed, and it is consistent with the view generally taken of parole. See, e. g., Jenkins v. Madigan, 211 F.2d 904, 906 (7th Cir.), cert. denied, 348 U.S. 842, 75 S.Ct. 63, 99 L.Ed. 664 (1954); United States ex rel. Gutterson v. Thompson, 47 F.Supp. 150, 151 (E.D.N.Y.1942), aff'd, 135 F.2d 626 (2d Cir. 1943).

Despite many similarities between the two types of terms, probation, unlike parole, has never been considered part of a sentence.

254 F.2d 352 (1958), refused to vacate a sentence after an ex parte extension and subsequent revocation. However, the court in *Freeman* expressed disapproval of the practice of granting ex parte extensions and stated that in future cases it would require the appearance of probationers with counsel. Our research has disclosed only one decision, a ruling by the Virginia Supreme Court,[5] which has held that revocations following ex parte extensions are invalid.

█ Before reaching the merits of this issue, however, we must first consider the threshold question of whether the case was properly brought under 28 U.S.C. § 2255. The court of appeals in *Freeman* affirmed the district court's ruling, but rather than decide the merits, it held that a challenge of this nature was not cognizable under § 2255. It reasoned that since the prisoner was challenging only the *execution* of his sentence and not its imposition, relief was available only through habeas corpus in the district of confinement or on direct appeal. We decline to follow this reasoning, since we believe that the sentencing of Skipworth after his probation was revoked was in every real sense the imposition of a sentence rather that its execution. Unlike the prisoner in *Freeman*, who was initially sentenced to a period of imprisonment but who was placed on probation when execution of that sentence was suspended, the petitioner here was never sentenced to imprisonment until after revocation. We also note that the District of Columbia Circuit has since sharply limited the reach of its earlier decision in *Freeman*. See United States v. Webster, 161 U.S. App.D.C. 1, 492 F.2d 1048, 1051 n. 1 (1974).

Turning to the merits, we observe that the law has changed considerably since the district court decision in *Freeman*. The court there relied primarily on the Supreme Court's decision in Escoe v.

Zerbst, 295 U.S. 490, 492–493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), which had stated in dicta that there was no constitutional right to a hearing before revocation of probation on the ground that probation is an "act of grace" or a "privilege" rather than a "right." However, in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court repudiated *Escoe* and held that due process does require that a probationer be given notice and the right to a hearing prior to revocation. In so holding, the Court followed its earlier decision in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which had established a constitutional right to a hearing before revocation of parole. Noting that the right/privilege distinction no longer had any validity,[6] the Court phrased the test as follows: "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.'" *Morrissey, supra*, 408 U.S. at 481, 92 S.Ct. at 2600. The Court also stressed the importance of a factual determination in a revocation proceeding as to whether the individual had substantially complied with the provisions of his parole (or probation).

After careful consideration of the principles set forth in *Morrissey* and *Gagnon* and their applicability to this case, we do not believe that due process required notice and a hearing prior to the extension of the petitioner's probation. While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as "grievous" a "loss" as revocation, and here it entailed no greater restrictions than those which existed previously. In fact, the primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely

---

5. Cook v. Commonwealth, 211 Va. 290, 176 S.E.2d 815 noted in 6 Univ. of Richmond L.Rev. 167 (1971).

6. The Supreme Court first repudiated this distinction in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). See also Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur. We add that the petitioner in fact received a revocation hearing at which he was represented by counsel.

■ We also note that the kind of factual inquiry in an extension proceeding is quite different from that in a revocation proceeding. In revocation proceedings, the trial judge must reasonably satisfy himself that the probationer has broken some law while on probation or has otherwise violated a condition of his probation. While the judge has considerable discretion as to whether to order revocation, he must at a minimum make an initial factual finding of a probation violation. A revocation hearing, therefore, provides the probationer with the crucial opportunity to contest an allegation of violation.

■ In granting an extension, however, the trial judge is given greater latitude, and he need not find that any probation violation has occurred. For example, in United States v. Squillante, 144 F.Supp. 494, 497 (S.D.N.Y.1956), the court refused to terminate the probation which it had previously extended, despite finding that the probationer had complied with the express condition of his probation, because it believed that "the best interest of society warrants the continuation of supervision over the probationer." See also United States v. Rosner, 161 F.Supp. 234 (S.D.N.Y.1958); United States v. Squillante, 137 F.Supp. 553 (S.D.N.Y.), aff'd, 235 F.2d 46 (2d Cir. 1956); United States v. Edminston, 69 F.Supp. 382, 384 (W.D.La.1947).

■ Given this latitude, it is clear to us that the trial judge in this case acted properly in granting the one-year extension. The petitioner had been arrested for narcotics violations on seven different occasions since being placed on probation, and charges arising from three of those arrests were still pending. The desirability of continued supervision of the petitioner was therefore obvious. On these facts, we cannot see any argument that the petitioner could have advanced against a one-year extension,[7] and thus we do not see how the lack of a hearing so prejudiced him as to constitute a denial of due process.

Additional circumstances in this case similarly undercut any claim of prejudice. The petitioner here was clearly on notice of the trial judge's power to extend the term of his probation, since the probation order he signed explicitly stated that the court had such power.[8] The extension did not entail any new or more onerous restrictions, since the conditions of probation were not changed in any way. Finally, the petitioner was given prompt notification of the extension and of the reasons it had been granted, and thus he was clearly on notice that he was still subject to its conditions and restrictions.[9]

■ On these facts, therefore, we conclude that the ex parte extension of Skipworth's probation was not so prejudicial as to constitute a violation of due process. However, because of the potential for prejudice in such extensions, we are in agreement with the district court in *Freeman* that they are inadvisable. Accordingly, we will hereafter require the district courts in this Circuit before extending probation to provide notice to

7. The petitioner has not even alleged any grounds on which the extensions were improper, other than its having been granted ex parte.

8. The order stated: "I understand that the Court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period." It is

evident from this language that the trial court was given greater latitude in extending or modifying probation than in revoking it, since only with respect to revocation was the court first required to find a violation of a condition of probation.

9. This case is thus unlike Jesseph v. People, 164 Colo. 312, 435 P.2d 224 (1967), where the court invalidated a revocation order because the probationer had not been notified before he committed the violation at issue that his probation had been extended.

the probationer of the proposed extension and advise him that he has a right to a hearing should he so desire, together with the assistance of counsel. We have been informed that the Eastern District of Pennsylvania has already begun this practice, and the other districts should do the same.

The judgment of the district court will be affirmed.