**UNITED STATES of America, Appellee,**

v.

**Lester Henry CAREY, Appellant.**

**No. 77–1637.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1977.

Decided Nov. 30, 1977.

Edward C. Vancil and Richard E. Coughlin, St. Louis, Mo., on brief, for appellant.

Barry A. Short (former U. S. Atty.), and Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

PER CURIAM.

Appellant Lester Henry Carey appeals from an order revoking his probation, contending that an earlier ex parte extension of his probation term violated his due process right to prior notice and a hearing. We affirm the order.

In 1973, Carey was indicted and pleaded guilty to a charge of possessing stolen mail matter in violation of 18 U.S.C. § 1708. On January 4, 1974, he was sentenced to a four-year term of imprisonment but the District Court[1] suspended the sentence and placed appellant on probation for three years. As part of that procedure Carey signed a Conditions of Probation Form that stated, *inter alia*, "I understand that the

Court may change the conditions of probation, [or] reduce or extend the period of probation. . . ."

In November of 1976, two months prior to the expiration of his probation term, Carey was arrested on a burglary charge. On December 29, 1976, in an ex parte proceeding, the District Court issued an order extending the probation period for one year, or until January 3, 1978.[2] Although Carey was not notified of the extension prior to the District Court's order, he was notified of the action by his probation officer prior to the state court proceedings. Carey entered a guilty plea to a charge of second degree burglary in state court on May 12, 1977. His conviction was a violation of his federal probation conditions, and a probation violator's warrant was subsequently issued. A probation revocation hearing was held in the District Court on August 12, 1977, and an order revoking Carey's probation was entered. Carey was sentenced to four years imprisonment, with a recommendation to the Attorney General that the federal sentence run concurrently with the sentence on the state charge.

In his appeal Carey contends that the ex parte extension deprived him of his liberty without due process of law, that the order extending the probation term was thus invalid, and that the conviction in state court proceedings could therefore not serve as the basis for a probation revocation because he had successfully completed his three-year probationary period.

The Supreme Court has held that probationers and parolees are entitled to due process protections in revocation proceedings. *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probationers); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parolees). In *Morrissey*, the Court held, "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous

1. The Honorable John K. Regan, United States District Court for the Eastern District of Missouri.

2. Authority for such an extension is contained in 18 U.S.C. § 3651.

loss.'" 408 U.S. at 481, 92 S.Ct. at 2600. The Supreme Court has not determined whether such protections should apply to proceedings extending the term of a validly imposed probation, but this precise issue was decided by the Third Circuit in *Skipworth v. United States*, 508 F.2d 598 (3d Cir. 1973). On facts very similar to those in this case, it was held in *Skipworth* that *Morrissey v. Brewer* and *Gagnon v. Scarpelli* do not require prior notice and a hearing in proceedings to extend probationary periods.

> [W]e do not believe that due process required notice and a hearing prior to the extension of the petitioner's probation. While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as "grievous" a "loss" as revocation, and here it entailed no greater restrictions than those which existed previously.

*Id.* at 601. The Court reasoned that (1) the loss of liberty in an extension proceeding is only a potential one; (2) the factual inquiry in an extension proceeding is different than in a revocation hearing because the probation period can be extended if the judge finds an extension to be in the "best interests of society," rather than requiring a finding that the conditions of probation have been violated; and (3) it is unlikely that a probationer will be able to present contrary arguments at a hearing. *Id.* at 601–02. In addition, the appellant in *Skipworth* had previously signed a probation order acknowledging the trial judge's authority to extend the term of probation, and he had been promptly notified when the term was in fact extended.[3]

Two recent Supreme Court decisions have applied a different test than the "grievous loss" test applied in *Skipworth* to cases alleging loss of liberty without due process of law. Both cases involved challenges by prisoners who had been transferred from one state correctional institution to another without a prior hearing. In *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), the Court said:

> We reject at the outset the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. . . . [T]he determining factor is the nature of the interest involved rather than its weight. (emphasis in original)

*See also Id.* at 224–25, 96 S.Ct. 2532. The Court explained its decision in the companion case of *Montayne v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

> We held in *Meachum v. Fano*, that no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events. . . . As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

■ We do not think that a mere noncustodial period of supervision to a term within the statutory limits implicates a liberty interest sufficient to require a preextension hearing as a constitutionally commanded right. Furthermore, there is no indication in the record that appellant was denied, or ever sought, a postextension review of the Court order. While we agree that it is a preferable procedure to provide a person confronted with a probation extension an opportunity to be heard if requested, we decline at this time to impose such a rule under our supervisory powers as was done in *Skipworth v. United States, supra,* 508 F.2d at 602–03. *See Ockel v. Riley*, 541 S.W.2d 535, 543–44 (Mo.1976).

Affirmed.

---

**3.** *Skipworth* was recently followed in *Ockel v. Riley*, 541 S.W.2d 535 (Mo.1976).