UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul Darke CORNWELL, II,
Defendant-Appellant.

No. 79–3900.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1980.

Jay L. Strongwater, Federal Public Defender, Atlanta, Ga., for defendant-appellant.

Janis M. Caplan, Asst. U. S. Atty., S. Lark Ingram, Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, VANCE and POLITZ, Circuit Judges.

TUTTLE, Circuit Judge:

This case is an appeal from two orders of the district court for the Northern District of Georgia, one extending appellant's probation for one year, and one revoking the appellant's probation. We affirm.

On January 17, 1975, appellant Paul Darke Cornwell pled guilty before the district court of the Southern District of Texas for possession with intent to distribute marijuana. He was sentenced under the Youth Corrections Act to four years of probation

to begin on January 17, 1975. The court's order imposed the following special conditions of probation: "(1) Defendant shall conform with all local, state, and federal laws. (2) Defendant shall comply strictly with regulations of Probation Officer. (3) Defendant shall not associate with persons involved in the drug culture." The order also stated that the court might change the conditions of probation or extend the period of probation. In December of 1977, jurisdiction of Cornwell was transferred to the district court for the Northern District of Georgia.

In October 1978, Cornwell was arrested twice for violation of the Georgia Controlled Substance Act. He was arrested by the Atlanta police department on October 9 and charged with violation of the Act. On October 17, he was arrested by Fulton County police and charged with violation of the Act and obstructing an officer. In December 1978, Carl Reeves, Cornwell's probation officer, told Cornwell that he planned to petition the court for an extension of probation based upon the two arrests. The petition was filed January 5, 1979, and was granted January 15, 1979, one day before the four year probation period was to expire. Cornwell was not notified that a petition had been filed, and was not given any opportunity to respond to the petition. He was notified by telephone on January 16, 1979, that his probation had been extended.

On March 27, 1979, Carl Reeves filed a petition requesting that Cornwell's probation be revoked, alleging that Cornwell failed to report for the months of January and February and moved without notifying Reeves. On March 29, prior to the hearing on the revocation petition, Cornwell was convicted of one of the two charged violations of the Georgia Controlled Substance Act. The other case was still pending at the time of the hearing. At the hearing on April 18, evidence was introduced to show that Cornwell had violated the terms of probation by his failure to report. When the government also attempted to introduce evidence that Cornwell had been arrested on two occasions and convicted of one offense, Cornwell's attorney objected. He stated that evidence of the arrests and conviction was not relevant because the petition to revoke was based solely upon Cornwell's failure to report. The court sustained the objection. After hearing the evidence, the court determined that probation should not be revoked on the ground of failure to report. The court specifically noted, however, that it did not reach the question of revocation on the basis of the arrests.

A second petition for revocation was filed on June 7, 1979, alleging that Cornwell had been convicted of one offense and was being held for trial on a second charge. On June 11, 1979, Cornwell pled guilty in the court of Fulton County, Georgia, to violation of the Georgia Controlled Substance Act. On November 8, 1979, the second petition for revocation was heard in the district court for the Northern District of Georgia. The court revoked Cornwell's probation on the basis of the two convictions.

On appeal, Cornwell asserts that the district court erred in two respects. First, he maintains that the district court erred in extending his probation without providing him notice and an opportunity to be heard. Second, he argues that the probation officer's failure to present all possible grounds for revocation in a single petition constituted a denial of due process.

### Extension of Probation

Cornwell asserts that the court's extension of his probation period, without notice or a hearing, constitutes a denial of due process. In making this argument, he relies upon *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–1760, 36 L.Ed.2d 656 (1973), in which the Supreme Court held that a probationer is entitled to notice and a hearing when a petition is filed to revoke his probation. The government points out that the only two courts of appeal to consider this question have refused to extend the rule of *Gagnon* to an extension of probation. *See United States v. Carey*, 565 F.2d 545, 547 (8th Cir. 1977), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1582, 55 L.Ed.2d 803

(1978); *Skipworth v. United States*, 508 F.2d 598, 601 (3d Cir. 1975).

The Supreme Court, in requiring hearings in connection with probation revocations, relied upon its earlier decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In that case, the Court held that the due process clause requires that an individual on parole be afforded a hearing before his parole is revoked. In determining whether the nature of the parolee's interest was within the Fourteenth Amendment protection of liberty or property, the court stated:

> The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.
>
> We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. [Footnotes omitted.]

*Id.* at 482, 92 S.Ct. at 2600. Subsequently, in *Gagnon v. Scarpelli, supra*, the Court held that the same guarantee of due process applies to revocations of probation, since revocation of probation results in the same loss of liberty. *Id.* at 782, 93 S.Ct. at 1759–1760. Cornwell argues that extension of probation results in a loss of liberty similar to the loss caused by revocation, and urges that this Court apply the rule of *Gagnon* to probation extensions.

■ The Supreme Court has not considered whether due process requires that an individual on probation be afforded an opportunity to be heard when his probation is extended; however, the courts of appeal for the Third and Eighth Circuits have considered and rejected claims of a due process right to a hearing in probation extensions. In *Skipworth v. United States*, 508 F.2d 598 (3d Cir. 1975), the court emphasized that the primary loss occasioned by extension of the probationary period is the possibility of future revocation, a loss which is only potential at the time of the extension. Since a probationer is entitled to a hearing prior to revocation, the potential of loss caused by extension was not considered sufficiently "grievous" to require a hearing. *Id.* at 601–02; *see United States v. Carey*, 565 F.2d 545, 547 (8th Cir. 1977).

We agree with the Third and Eighth Circuits that extension of "a non-custodial period of supervision to a term within the statutory limits [does not] implicate a liberty interest sufficient to require a preextension hearing as a constitutionally commanded right." *Id.* The nature of the interest and the loss resulting from extension simply do not parallel the fundamental nature of the interest or the seriousness of the loss involved in *Morrissey* and *Gagnon*.

In the instant case, the probationer was not prejudiced by the court's ex parte extension of probation. Cornwell had been arrested twice for narcotics violations and was awaiting trial on both of these charges. Since the probation would expire a few months before his trials on these charges were concluded, the grant of extension was entirely reasonable. Cornwell could not dispute the fact of the pending charges; thus, the lack of a hearing did not result in any actual prejudice to him. However, we agree with the Third Circuit that there is a great potential for prejudice in ex parte extensions of probation. If a petition for extension is based upon the probationer's alleged violation of probation terms, the probationer may be able to show that he did

not actually violate the terms, or that mitigating circumstances affect the need for extension. Accordingly, we require, exercising this court's supervisory powers, that district courts shall hereafter provide notice to probationers of proposed extensions and advise probationers that they have a right to a hearing before the court acts. *See Skipworth v. United States, supra,* at 602–03.

### Revocation Proceedings

Cornwell also asserts that the parole officer's "piecemeal" approach to revocation constitutes a denial of due process. He relies upon *United States v. Tyler,* 605 F.2d 851 (5th Cir. 1979) for the proposition that a probation officer has a duty to present in one petition all the grounds for revocation of which he is aware, rather than presenting them in separate petitions.

In *Tyler,* a probationer was convicted of three misdemeanors over a two year period. A year after the last conviction, the probation officer, who was aware of the convictions, filed a petition to revoke probation on other grounds. The petition was denied. Six months later, the officer filed a petition to revoke on the basis of the three convictions. The court held that the lengthy delay, coupled with the probation officer's obvious decision not to rely upon the convictions in the first petition, constituted fundamental unfairness. *Id.* at 853.

We find *Tyler* to be clearly distinguishable from the instant case. Cornwell's conviction was obtained after the first petition for revocation was filed but before the hearing on the petition was held. Under these circumstances, the probation officer's failure to amend the petition to allege the intervening conviction does not present the "fundamental unfairness" that *Tyler* proscribes. Furthermore, the defendant's attorney specifically objected to any mention of the conviction or pending charges, stating that they were irrelevant to a revocation petition based upon failure to report. We find no due process violation under these circumstances.

The judgment is AFFIRMED. Instructions as to future procedure given.