UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles ORTIZ, Defendant-Appellant.

No. 83–2564.

United States Court of Appeals,
Tenth Circuit.

May 15, 1984.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

William L. Lutz, U.S. Atty., and Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

PER CURIAM.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

On July 15, 1981, defendant was charged by information with the crime of offering to sell and selling parts of the bodies of golden eagles in violation of 16 U.S.C. § 668(a). Defendant consented to proceeding before a federal magistrate and entered a plea of guilty to the offense. Defendant was sentenced to supervised probation for two years and a fine of $650 to be paid in installments.

Two years later the Federal Probation Office petitioned the court for an extension of supervision because defendant had paid only $75 toward the fine. After a hearing the magistrate ordered that the probationary period be extended for two years. Defendant appealed to the United States District Court for the District of New Mexico pursuant to 18 U.S.C. § 3402. The district court afforded de novo review of the magistrate's decision and affirmed. Defendant timely appealed.

Defendant contends that the extension of probation solely because of an inability to pay a fine through no fault of his own violates equal protection. The undisputed facts showed that defendant made efforts to pay the fine, but his financial responsibilities and his chronic lack of employment prevented him from doing so. Defendant argues that the effect of the extension of probation is to hold the threat of imprisonment over his head. Probation is substantial punishment, according to defendant, because of the numerous conditions imposed on the probationer. Moreover, the due process protections afforded to the probationer are not as great as those afforded the average citizen. Defendant also points to the punishment imposed by his tribe, the Acoma, as the "alternative form of punishment" contemplated in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983).

Defendant's second argument is that the district court impermissibly exceeded the scope of review by affording a de novo determination and imposing additional conditions. The challenged conditions are that "the Federal Probation Office place the defendant on a regular payment schedule scaled to his income level" and that "if at the end of the defendant's probation his

fine has not been paid in full, the Federal Probation Office is to request that the United States Attorney initiate any available proceeding to collect the balance of the fine."

*The Extension of Probation*

The recent Supreme Court decision in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) provides the framework for resolving the issue of "equal protection." *Bearden* involved an equal protection challenge to the automatic revocation of an indigent defendant's probation because defendant could not pay the fine imposed as a condition of probation. The Court held that revoking provation and imprisoning a person because he cannot pay a fine without considering the reasons for the inability to pay or determining that alternate forms of punishment would not be adequate to meet the state's interest is contrary to the fundamental fairness required by the Fourteenth Amendment. *Id.* at 2073–74.

In arriving at its decision, the Supreme Court applied a due process rather than an equal protection analysis focusing on "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose ...." *Id.* at 2069 (quoting *Williams v. Illinois*, 399 U.S. 235, 260, 90 S.Ct. 2018, 2031, 26 L.Ed.2d 586 (1970) (Harlan, J., concurring)).

The nature of the liberty interest and the extent to which it is affected when probation is extended is aptly described in *Skipworth v. United States*, 508 F.2d 598, 601 (3d Cir.1975):

While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as "grievous" a "loss" as revocation .... In fact, the primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is

merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur.

*Skipworth* dealt with the procedural due process issue of whether notice and a hearing are constitutionally required prior to an extension of probation. In deciding this question in the negative, the court distinguished the grievous loss of liberty implicated in a revocation of probation with the milder loss involved in a probation extension.

An examination of the governmental interest begins with the statute itself, 18 U.S.C. § 3651, which empowers the district court to extend or modify the period of probation for a term not to exceed five years. The guideline to be used by the district court in extending probation is whether "the best interest of society warrants the continuation of supervision over the probationer." *United States v. Chancey,* 695 F.2d 1275, 1277 (11th Cir.1982) (quoting *Skipworth v. United States,* 508 F.2d at 602). Thus, the district court's decision has been described as one of great latitude, such that an extension of probation does not require a finding that any violation of probation has occurred. *United States v. Briones-Garza,* 680 F.2d 417, 424 (5th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982); *Skipworth v. United States,* 508 F.2d at 602.

■ While *Bearden v. Georgia* would seem to prohibit *incarceration* under the facts of the instant case, the extension of probation because of defendant's failure to pay the fine does not violate fundamental fairness. Indeed, such an extension appears to have been contemplated by the Supreme Court when it required that alternative forms of punishment be considered, specifically, "extending the time for payments." *Bearden* at 2073. If defendant were to pay the fine before the expiration of the new term of probation, then a different issue would be presented. This question, however, is not before us at this time.

*The De Novo Determination*

Under Rule 7(e) of the Rules of Procedure for the Trial of Misdemeanors before United States Magistrates, "[T]he defendant shall not be entitled to a trial de novo by a judge of the district court. The scope of appeal shall be the same as on an appeal from a judgment of a district court to a court of appeals."

■ The standard of review in a de novo determination is more favorable to defendant than the traditional appellate review in which the evidence is viewed in the light most favorable to the government and in which the magistrate's findings must be upheld unless clearly erroneous. *See, e.g., United States v. Robinson,* 523 F.Supp. 1006 (E.D.N.Y.1981), *aff'd,* 685 F.2d 427 (2d Cir.1982).

■ With regard to the "additional conditions" of requiring a payment schedule and directing the probation department to contact the United States Attorney for collection at the end of the new probation term, it is apparent that these requirements relate to the manner in which the fine is to be paid, not an additional sanction. These amplifications of the magistrate's order are permissible whether the district court made a de novo determination, *see* 28 U.S.C. § 636(b)(1)(C), or exercised its appellate jurisdiction. *See* 28 U.S.C. § 2106.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED. The mandate shall issue forthwith.