The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Michael William CONNER, Defendant–Appellant.

No. 03CA2476.

Colorado Court of Appeals, Div. II.

May 4, 2006.

Certiorari Denied Nov. 6, 2006.*

* Justice EID does not participate.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

GRAHAM, J.

Defendant, Michael William Conner, appeals the trial court's order denying his Crim. P. 35(c) motion. We affirm.

Defendant pleaded guilty to attempted second degree assault pursuant to §§ 18–2–101 and 18–3–203, C.R.S.2005. On April 26, 1994, the court imposed four years of intensive supervision probation and ordered defendant to pay costs, including $1,125.30 in restitution.

Between 1995 and 1997, defendant's probation officer filed three complaints alleging probation violations, two of which progressed to probation revocation hearings and resulted in the revocation and the regranting of defendant's probation.

On September 22, 2000, seven days before the termination date of his probation, defendant's probation officer filed a request to extend the term of his probation for one year, because he had failed to pay restitution. The extension was signed by defendant and stated:

> I, [defendant], have read the above motion to extend the term of probation, understand its contents, and admit to not having met the above listed condition(s) of probation. I hereby request the Court to extend my probation until the date listed to allow more time to meet said condition(s). I have been advised and understand that Colorado law gives the right to request a hearing before the term of probation is modified. I waive the right to have such a hearing conducted.

The court extended defendant's probationary term to September 21, 2001.

On February 12, 2001, defendant's probation officer filed a fourth complaint alleging probation violations based on defendant's guilty pleas to driving without a valid license and to escape, failure to report to his probation officer, and failure to pay restitution. Defendant's probation officer filed a fifth complaint prior to the revocation hearing alleging an additional probation violation based on charges filed against defendant for unlawful distribution of a schedule II controlled substance and theft.

At the revocation hearing, defendant admitted that he violated the terms of his probation. The court sentenced defendant to three years to be served in the Department of Corrections (DOC), plus two years of mandatory parole.

At the same hearing, defendant also pleaded guilty to attempted distribution or sale of methamphetamine, and the court sentenced him to eight years in the DOC, plus three years of mandatory parole, to be served concurrently with the sentence imposed for his probation violation.

Defendant then filed a pro se motion for postconviction relief under Crim. P. 35(c), asserting that (1) his probation officer illegally obtained his consent to extend his probation by threatening that his probation would be revoked and that he would go to prison if he did not sign the consent; (2) his failure to pay restitution did not automatically extend his probation and the court could not revoke his probation without first considering whether he was able to pay restitution and finding that he had willfully failed to pay restitution; and (3) the sentence is illegal because his probationary period had already expired when the court sentenced him.

The court denied defendant's motion and found that his allegations had no basis in fact, because he had consented to the extension. The court concluded that because

defendant was still on probation when his probation officer filed the fourth and fifth complaints alleging probation violations, the sentence imposed upon him was legal. Defendant then filed this appeal and obtained a limited remand for an evidentiary hearing.

In a subsequent hearing on the issue of whether defendant knowingly and voluntarily consented to the extension of his probation, defendant admitted that he knew he had the right to have the court decide whether his probation should be revoked and to request that he be represented by an attorney.

Defendant testified that his probation officer told him that if he did not sign the request to extend his probation, she would file a motion to revoke his probation, that he would go in front of the judge, and that he would probably go to prison. Defendant further testified that he had been through the probation revocation process twice before he signed the request to extend his probation. Defendant acknowledged that his probation officer had not threatened him.

Defendant's probation officer did not materially dispute defendant's testimony.

At the conclusion of the hearing, the court found no evidence that defendant had a diminished mental capacity or lacked the ability to read, understand, and write English. The court further found that the probation officer did not exert any improper influence over defendant; that defendant's will was not overborne in any way; that defendant was well acquainted with probation revocation hearing procedures; and that he was aware of his right to have a hearing in front of a judge.

The court found that defendant's consent to the extension of his probation was made knowingly and voluntarily and resulted from defendant's choice to extend his probation rather than have a hearing before the judge on that issue. The court further concluded that a court's extension of probation with a defendant's consent did not require the application of the same standards as a probation revocation hearing; that Crim. P. 11 was not applicable to the consensual extension of probation; and that defendant's consent to the extension did not amount to an admission of a probation violation.

## I. Standard of Review

In reviewing the denial of a Crim. P. 35 motion, we will not disturb the trial court's determination on appeal if the record supports its findings and judgment. *See Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563 (Colo.1991). It is within "the province of the court, as the trier of fact, to determine the credibility of the witnesses and the weight to be given their testimony." *Kailey v. Colo. State Dep't of Corr., supra*, 807 P.2d at 567.

## II. Extension of Probation

Defendant first contends that he was denied due process because his consent to an extension of probation was not knowing and voluntary. He contends here that, at a minimum, the full scope of due process required a hearing with notice, disclosure of evidence, an opportunity to be heard and present evidence, and the right to cross-examine adverse witnesses. He also contends that due process required the probation officer to disclose to him that he could have requested termination of probation based on his inability to pay restitution. We are not persuaded.

We are not aware of any standard for measuring the process that is due to a probationer who is asked to consent to an extension of probation. The examination of the due process rights that must be afforded to a defendant when the court extends his probation is an issue of first impression in Colorado.

Defendant urges that there is no practical difference between his situation and those circumstances attending searches and seizures, confessions, guilty pleas, or waivers of constitutional rights. Defendant suggests that the due process protections afforded in a probation revocation hearing should also apply to the extension of probation. We disagree.

Colorado's statutory scheme suggests that while due process must be accorded to defendants in probation revocation and probation extension proceedings, where a defendant

consents to an extension, there is no requirement for a hearing or other proceedings designed to assure that a defendant is making a knowing and voluntary decision.

The trial court has the authority to "grant the defendant probation for such period and upon such terms and conditions as it deems best." Section 18–1.3–202(1), C.R.S.2005. The court may thereafter extend a defendant's probationary term "[f]or good cause shown and after notice to the defendant, the district attorney, and the probation officer, and after a hearing *if the defendant* or the district attorney *requests it.*" Section 18–1.3–204(4), C.R.S.2005 (emphasis added). But the provisions of the statute concerning notice, a hearing, and a showing of good cause are not applicable if the defendant consents to the extension. *See People v. Blackorby,* 41 Colo.App. 251, 583 P.2d 949 (1978).

■ In contrast, a parole revocation hearing must meet the following minimum due process requirements:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *see also* § 16–11–206, C.R.S.2005; *People v. Atencio,* 186 Colo. 76, 525 P.2d 461 (1974).

In reaching our conclusion that due process rights are less significant in probation extension proceedings than they are in probation revocation proceedings, we find *Skipworth v. United States,* 508 F.2d 598 (3d Cir.1975), instructive.

In *Skipworth,* the court reasoned that whether any procedural protections are due in probation extension cases is dependent upon the extent to which an individual will be "condemned to suffer grievous loss." *Skipworth v. United States, supra,* 508 F.2d at 601 (quoting *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600). An extension of probation clearly does not entail as grievous a loss as that at stake in revocation proceedings.

In fact, the primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur.

*Skipworth v. United States, supra,* 508 F.2d at 601–02; *see State v. McDonald,* 272 Kan. 222, 32 P.3d 1167 (2001) (ex parte order extending the defendant's probation did not violate due process; the extension of probation is not equivalent to the "grievous loss" of liberty arising from probation revocation proceedings); *see also United States v. Ortiz,* 733 F.2d 1416, 1418 (10th Cir.1984) (the extension of the defendant's probation based on his failure to pay a fine did not violate fundamental fairness, but rather "appears to have been contemplated by the Supreme Court when it required that alternative forms of punishment be considered, specifically, 'extending the time for payments'" in *Bearden v. Georgia,* 461 U.S. 660, 674, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983)).

Thus, we conclude that due process did not require that the court hold a hearing before extending defendant's probation. In any event, defendant received such a hearing on remand, and the court properly determined that his consent to the extension was valid.

The record indicates that defendant was familiar with the probation revocation process and had already participated in two probation revocation hearings when he signed the request to extend his probation. The request advised defendant that he was entitled to a hearing before his probation was extended. The probation officer testified that she read the request to defendant, and

there is no evidence that defendant was unable to read the request himself. There is also no evidence that the probation officer threatened or coerced defendant into signing the request. Defendant admitted at the hearing on remand that his probation officer did not threaten him in any way. Further, there is no evidence that defendant was a minor or under any disability.

Defendant also asserts that his consent to the extension was not knowingly and voluntarily made because his probation officer did not advise him that he could request termination of his probation based on his financial inability to pay or that the unpaid restitution could be turned over to a collection agency if he were released from probation. Although probation officers have a duty to the court pursuant to probation orders and statutes, see, e.g., Davenport v. Cmty. Corr., Inc., 962 P.2d 963 (Colo.1998), a probation officer does not have any corresponding duty to a probationer. We have found no authority, statutory or otherwise, that imposes such a duty upon a probation officer.

We conclude that the evidence supports the trial court's finding that defendant's consent to extend his probation term was made knowingly and voluntarily. Under the circumstances presented here, defendant was accorded sufficient due process by the trial court in reaching that conclusion. The record suggests that defendant chose to extend his probation rather than proceed to a revocation hearing, which could have resulted in the revocation of his probation. It was for the trial court to determine the credibility of defendant and his probation officer and the weight to be given their testimony. Accordingly, we decline to disturb the trial court's determination on appeal. See Kailey v. Colo. State Dep't of Corr., supra.

### III. Restitution

■ Defendant next argues that the court erred when it did not make a determination of his ability to pay restitution when it revoked his probation. We disagree.

■ "Probation is a privilege, not a right, and may be revoked if a probationer violates any condition of an order of proba-

tion." People v. Moses, 64 P.3d 904, 906 (Colo.App.2002). There is a presumption that a probationer knows that violating any term of his probation could result in revocation. See People v. Zimmerman, 616 P.2d 997 (Colo.App.1980). The standard of proof required to prove a violation of probation is the preponderance of the evidence even though the breaching conduct may also be a criminal offense. See People v. Moses, supra.

■ Before revoking a defendant's probation based on his failure to pay restitution, a court must first make a finding that the defendant has the present ability to pay. See People v. Romero, 192 Colo. 106, 559 P.2d 1101 (1976); see also People v. Gore, 774 P.2d 877 (Colo.1989) (failure to make restitution payments does not automatically result in the revocation of probation). The requirement that the defendant have the present ability to pay "contemplates that (1) a job for which the probationer is qualified is available; (2) the job would produce an income adequate to meet his obligations; and (3) the probationer unjustifiably refuses to take it." People v. Romero, supra, 192 Colo. at 108, 559 P.2d at 1102.

■ "The reason for requiring that ability to pay be established before probation can be revoked is to allow revocation only where the probationer unreasonably or willfully fails to comply with the terms of his probation." Strickland v. People, 197 Colo. 488, 490, 594 P.2d 578, 579 (1979). The trial court must "find that the defendant had the ability to pay at the time the payments should have been made." Strickland v. People, supra, 197 Colo. at 490, 594 P.2d at 579; see also People v. Gore, supra.

Here, the court did not revoke defendant's probation based on his failure to pay restitution. Defendant pleaded guilty to the attempted distribution or sale of methamphetamine, which violated the terms of his probation. He acknowledged that he understood that, by entering his guilty plea, he was confessing to the probation violation. Because it was proved that defendant violated his probation by a preponderance of the evidence, it was not necessary for the trial court to make a finding that defendant un-

reasonably or willfully failed to pay restitution.

Accordingly, we will not disturb the trial court's denial of defendant's Crim. P. 35(c) motion on appeal. *See Kailey v. Colo. State Dep't of Corr., supra.*

The order is affirmed.

Judge ROTHENBERG and Judge CARPARELLI concur.