**UNITED STATES of America**

v.

**Vincent J. SQUILLANTE, Defendant.**

United States District Court
S. D. New York.

Sept. 14, 1956.

Paul W. Williams, U. S. Atty., by Eliot H. Lumbard, Asst. U. S. Atty., New York City, for the Government.

H. Jordan Lee, New York City. for defendant.

IRVING R. KAUFMAN, District Judge.

The defendant pleaded guilty to two separate informations charging him with wilful failure to make income tax returns. The imposition of sentence was suspended on February 3, 1953, the defendant was placed on probation for three years subject to the standing order of this Court and to the condition that he pay a fine of $1,000 on each information and make honest efforts to pay in full the amounts to be assessed against him by the Bureau of Internal Revenue.

On February 3, 1956, I was advised by the Probation Office that the defendant had failed to comply with the last condition of his probation. While the failure to comply with conditions of probation may in certain situations warrant the revocation of probation and the imposition of a sentence of imprisonment,

18 U.S.C. § 3653, I chose rather, in the exercise of the discretionary powers given me by 18 U.S.C. § 3651, to extend the defendant's period of probation for two more years. My opinion is reported in 137 F.Supp. 553, and my decision was affirmed per curiam by the Second Circuit Court of Appeals, 235 F.2d 46.

On June 14, 1956, the defendant complied with the condition of his probation to make full payment of his tax liability to the Internal Revenue Bureau. On the basis of this payment the defendant now seeks an order terminating his probation, and his motion is opposed by the Probation Office, which is represented here by the United States Attorney.

The authority for discharging the probationer, as that for extending his probationary period, is statutory. The statute reads in part:

"The court may revoke or modify any condition of probation, or may change the period of probation." 18 U.S.C. § 3651.

18 U.S.C. § 3653 reads in part:

"When directed by the court, the probation officer shall report to the court, with a statement of the conduct of the probationer while on probation. The court may thereupon discharge the probationer from further supervision and may terminate the proceedings against him, or may extend the probation, as shall seem advisable."

The question of what criteria should guide the judge in the exercise of his discretion in such matters was answered by Chief Justice Hughes in Burns v. United States, 287 U.S. 216, 221, 53 S.Ct. 154, 156, 77 L.Ed. 266, wherein he stated:

"No criteria for modification or revocation are suggested which are in addition to, or different from, those which pertain to the original grant. The question in both cases is whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant. The

only limitation, and this applies to both the grant and any modification of it, is that the total period of probation shall not exceed five years."

While the fact that the defendant has finally complied with the express condition of his probation is in his favor, it is certainly not determinative by itself of the present motion. Although probation was continued because of defendant's failure to pay his tax liability, the period of extension was not made conditional on the time it would take defendant to make payment.

It is noteworthy that at the time of the probation extension, I did not fix the extension for such period only as it would take the defendant to pay his tax liability. Indeed, counsel for the defendant pleaded with the Court to extend the period of probation for only one year, but this Court nevertheless saw fit to fix the extension of probation for a period of two years, which would be the maximum period of probation permitted under the statute.

The additional period of probation was fixed at two years and was imposed on Squillante because his failure to comply with the conditions of his original probation indicated that he was not yet ready to be totally free of supervision. Indeed, at the hearing on February 3, 1956, I stated:

"I may very well revoke this probation because I think there has been too much horseplay entirely on this thing. I do not think that he has complied with what I directed that he comply with, nor has he shown an honest intention to pay this sum of money. I think if he had actually intended to pay it, there would be no objection here today to the extension of probation. Indeed, there would be a consent to it."

Normally, I might be inclined to view defendant's payment of his tax liability as indicative of reformation and possibly entitling him to a termination of probation. The information submitted to me by the Probation Office indicates, however, that his activities are of a sus-

picious character and certainly of a quality that would require, in the exercise of any court's discretion, further supervision of the probationer.

I have before me a report of the Probation Department dated September 13, 1956, indicating highly questionable conduct on the part of the probationer. I repeat, on February 3, 1956, I stated that I did not believe that there had been an honest effort on the part of the probationer to pay the taxes, and I underline the use of the word "honest".

At the time of the hearing I was advised by counsel that at the rate of payment required at that point, to wit, $50 per week, it would take the probationer six years to pay off his indebtedness to the Government and that the probationer had no other means of acquiring the money necessary to pay his tax liability. On June 14 of this year, however, the entire amount of the income tax indebtedness was suddenly paid in the amount of $14,215.99 as a result of, I am advised by probationer's counsel, the gratuitous advance of that sum of money by two cartmen's associations. It is difficult for me to understand why these associations would suddenly and gratuitously make that advance. I am advised that this was done in order to bring about the discharge of the probationer from probation by these associations, and I cannot understand their deep interest in seeing the petitioner discharged from probation, particularly a probation which was not onerous in any respect. Indeed, the Probation Office advises me that on June 4, 1956, after certain newspaper articles had appeared indicating the questionable activity of the probationer, he presented himself at the office of the Probation Department and there he disclosed *for the first time*—and I emphasize that at no time during the more than three years' probation previously had he made any such disclosure—that he controlled as the sole owner a firm called "Empire Management Associates Corp." with an office in Queens County.

Furthermore, for the first time, the Probation Office learned that the proba-

tioner had contacts with various cartmen's associations and through these associations either he or a company of his received $100 per year from each firm in the association. I am advised that there are several hundred members of these various associations.

Furthermore, I am advised, as I have previously indicated, that in May of 1956, when the probationer was detained by detectives of Nassau County, an address book was found in his possession containing numerous telephone numbers. Investigation was made of the numbers, and it appears that there are at least a dozen well-known hoodlums whose numbers are listed in the book. It can be reasonably assumed from this that this man had been associating with criminal elements, which in itself would be a violation of a condition of probation in this court which directs the probationer to "keep good company and good hours."

When questioned by the Probation Office concerning his association with gangsters, hoodlums and racketeers, the probation report states that he replied that what association he had with them was strictly because of business since some of these men are in the garbage business.

And so the probation report summarizes for me this picture: Here is a man who was a small fruit peddler, who without education or background in the labor relations field suddenly blossoms forth as a labor relations counselor for the garbage industry. He has no known qualifications for the position, and it is generally believed that he is a front for unsavory elements. The Probation Office believes that the probation should be continued, that this might serve as a check rein upon some of the activities of this man, that the community would benefit by a continuation of this probation and that probation is not a burden for him. Indeed, the violent efforts made since February of this year for a termination of probation draw into question the reasons which might lurk in the petitioner's mind for such a discharge. We have the strange picture of a man seek-

ing a discharge from probation in February 1956 advising the Court that he had made every honest effort to make full payment of the tax liability to the Government and that it would take approximately six years from that date to make payment of the amount owing, making full payment through the aid of two associations within a period of four months from the time the statement was made to the Court.

█ I am convinced, therefore, that the best interest of society warrants the continuation of supervision over the probationer.

Motion denied. So ordered.