Let the United States Attorney prepare a proper judgment order.

**UNITED STATES of America**
**v.**
**Emanuel ROSNER, Defendant.**

United States District Court
S. D. New York.

April 21, 1958.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City, for United States of America, Edward R. Cunniffe, Jr., Asst. U. S. Atty., New York City, of counsel.

Frank L. Miller, New York City, for defendant.

FREDERICK van PELT BRYAN, District Judge.

The Chief Probation Officer of this court petitions for an extension of the probation term of defendant Rosner "for 4 years to expire on 4/22/62. To be terminated sooner, if Rosner pays taxes found to be due."

Defendant pleaded guilty to two indictments charging him with wilfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by him to the United States for the calendar years 1946 and 1947 in violation of Section 145(b) of the Internal Revenue Code; 26 U.S.C. § 145(b) On November 15, 1956 the defendant was sentenced to six months' imprisonment and fined $5,000 on the first of these indictments. On the other he received the same sentence but execution of the prison sentence was suspended and he was placed on probation for a period of one year to begin after completion of the prison sentence on the other indictment. It was a condition of probation "that defendant cooperate with agencies of the government with regard to his income tax liabilities."

The defendant has served his prison term under the first sentence and has paid the fines imposed on both. The one year period of probation under the second sentence which commenced upon his release from imprisonment will expire on April 22, 1958.

The grounds of the petition for extension of this probation period are "That Rosner has been negotiating with the Internal Revenue Department to determine the amount of taxes due. That we have been advised by the Internal Revenue Department that negotiations are still under way and that more time is needed by them to determine the amount of taxes owed by Rosner and to evaluate the degree of cooperation."

The application is opposed by the defendant who asserts that he has met all of the conditions upon which probation was granted, and that he is therefore entitled to be released from supervision when the original term expires.

On the argument of the petition before me both the Government, represented by the United States Attorney and by counsel representing the Regional Counsel of the Bureau of Internal Revenue, and counsel for the defendant, agreed that the facts as stated on the argument were undisputed. There is therefore no necessity for the taking of testimony and the petition will be decided upon the record at the argument.

 There is no doubt about my authority to grant this application. Whether or not I should do so is entirely a matter in my discretion.

The statute which authorizes probation, 18 U.S.C. § 3651, provides in part that

"The court may revoke or modify any condition of probation, or may change the period of probation."

18 U.S.C. § 3653, dealing with procedures in the administration of probation, reads in part:

"When directed by the court, the probation officer shall report to the court, with a statement of the conduct of the probationer while on probation. The court may thereupon discharge the probationer from further supervision and may terminate the proceedings against him, or may

extend the probation, as shall seem advisable.

\*　　\*　　\*　　\*　　\*

"\* \* \* At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised \* \* \* may issue a warrant for his arrest for violation of probation occurring during the probation period. \* \* \*.

"As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of the sentence was suspended, may impose any sentence which might originally have been imposed."

In Burns v. United States, 287 U.S. 216, at page 221, 53 S.Ct. 154, at page 156, 77 L.Ed. 266, Chief Justice Hughes described the criteria which should guide the court in the exercise of its discretion in such matters in the following language:

"There is no suggestion in the statute that the scope of the discretion conferred for the purpose of making the grant is narrowed in providing for its modification or revocation. The authority for the latter purpose immediately follows that given for the former, and is in terms equally broad. 'The court may revoke or modify any condition of probation, or may change the period of probation.' There are no limiting requirements as to the formulation of charges, notice of charges, or manner of hearing or determination. No criteria for modification or revocation are suggested which are in addition to, or different from, those which pertain to the original grant. The question in both cases is whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant. The only limitation, and this applies to both the grant and any modification of it, is that the total period of probation shall not exceed five years. Act of March 4, 1952, § 1."

■■ Probation is a privilege, not a right. The probationer is a person convicted of an offense and "the suspension of his sentence remains within control of the court." And "the continuance of that control, apparent from the terms of the statute, is essential to the accomplishment of its beneficent purpose". Nor do the imposition of specific conditions impose any limit upon the court's discretion to modify the terms of probation, impose other conditions or revoke it. Burns v. United States, supra, 287 U.S. at page 222, 53 S.Ct. at page 156.

Since the Burns case, cases dealing with the scope of the court's power to deal with the terms of probation have not been frequent but have consistently held that the court has very wide latitude in exercising its discretion. See United States v. Squillante, 2 Cir., 235 F.2d 46, affirming United States v. Squillante, D.C.S.D.N.Y., 137 F.Supp. 553; United States v. Squillante, D.C.S.D.N.Y., 144 F.Supp. 494; Reed v. United States, 9 Cir., 181 F.2d 141; United States v. Edminston, D.C.W.D.La., 69 F.Supp. 382; United States v. Koppelman, D.C. M.D.Pa., 61 F.Supp. 1007.

In the second Squillante case the court went so far as to deny termination of probation despite "the fact that the defendant has finally complied with the express condition of his probation" which was to pay his tax liabilities in full because "the best interests of society warrant the continuation of supervision over the probationer." 144 F.Supp. at page 495. The term of probation had already been extended in the first Squillante case upon a showing that defendant had not complied with the condition that he make honest efforts to pay in full the amount of tax liabilities to be assessed against him by the Bureau of Internal Revenue.

The Government does not take the position here that there was a violation of the condition of probation which might call for its revocation and a sentence of imprisonment. It asserts that it cannot, at this time, determine whether defendant has met the condition by cooperating fully with the authorities and by making an honest effort to meet his tax liabilities in good faith. The Government says that until negotiations with the defendant are concluded, and the tax liabilities are finally assessed, it is impossible to determine whether or not defendant has done so.

The facts may be briefly summarized as follows:

Prior to the commencement of the investigation of defendant's tax liability he had destroyed his books and records. For this reason it was necessary for the Internal Revenue Service to reconstruct his income by a canvass of the records of those with whom he did business. After extensive investigation by the Bureau it was determined that defendant had unreported and unrecorded sales of over $200,000 and that there had been a fraudulent attempt to evade payment of the taxes due on this amount by the suppression of such income.

Defendant, while conceding most of the unreported sales, contended that allowance had not been made for costs of the merchandise sold and that his net taxable income, after allowance for such costs, was much less than the deficiency claimed to be due. After giving him credit for all the costs which could be verified, a net deficiency was arrived at and this was the subject of the two indictments to which defendant pleaded guilty.

Within a month after defendant was sentenced on November 15, 1956, the District Director of Internal Revenue issued a 30-day letter to defendant on this asserted tax liability. After some relatively minor downward adjustments the amount now claimed to be due, with penalties, is some $105,000. While defendant was still in prison he executed a protest which was in effect a general denial of tax liability and requested a conference.

A number of conferences were held pursuant to this request after defendant's release. Finally, the taxpayer made an offer to settle the asserted tax liability for approximately 17¢ on the dollar. He has produced no evidence to convince the Bureau of the reasonableness of his offer other than that which had already been rejected by the Bureau as insufficient prior to the indictment. The matter has finally reached the Appellate Division of the Regional Commissioner's Office for a final assessment. After such determination the next step is the issuance of the 90-day letter. The taxpayer must then either agree to the assessment, file his petition in the Tax Court, or pay the assessment under protest and bring suit in this court for its recovery. In the more likely event that proceedings are had in the Tax Court a decision there could normally be expected in approximately a year. Thereafter, of course, there are possible appeals.

Thus, in the present posture of the case the tax liabilities have not yet been finally assessed. There may be additional negotiations with the Government on this subject and if such negotiations fail the taxpayer may pursue his civil remedies leading to a final determination of the amount which he is required to pay.

Any delays up to this time are due to no fault of the Government, which has acted with reasonable dispatch. While, on the one hand, it cannot be said with any certainty that defendant has been conducting a mere delaying action, on the other it does not appear that there has been any eagerness on defendant's part to dispose of his tax liabilities, and there is at least doubt as to the bona fides of his claims for such large reduction of the asserted liability. It must be remembered that such difficulties as defendant is now encountering were brought about by his own wrongful acts in destroying his books and records in an effort to cheat the Government. He has admitted his attempt to do so by his plea of guilt

238

to the indictments so charging. His rehabilitation may be measured by the speed and conscientiousness of his efforts to repair the wrong he has done.

I have no intention of permitting the probationary power of this court to be used as a club to force the defendant to settle his tax liabilities on terms dictated by the Government. Defendant is entitled to assert any bona fide defenses which he may have to the tax liabilities claimed and to have those defenses passed upon by the appropriate civil tribunal.

On the other hand, both the letter and spirit of the condition of defendant's probation directing that he cooperate with agencies of the Government with regard to his income tax liabilities requires more than merely lip service. It requires that defendant move with all diligence to settle and pay his tax liabilities on a reasonable and just basis.

It is still impossible to tell whether or not defendant has done so and his conduct, thus far, at least raises a doubt as to whether he has. A large tax liability is still outstanding and it cannot be assumed that the Government is without some reasonable basis for claiming that this amount is due. There is certainly no suggestion here that the Government has not been acting in complete good faith.

Defendant's offer to pay 17¢ on the dollar, predicated largely on evidence which had already been rejected by the Government prior to his indictment, and without the submission of any new or convincing evidence of the reasonableness of his offer, does not impel the conclusion that the condition of his probation has as yet been fully complied with both in spirit and in letter.

■ Under all the circumstances I conclude that the ends of justice and the interests of both the public and defendant will be served by an extension of the period of probation for an additional four years. The probation as so extended will be conditioned upon continuing cooperation of the defendant with Gov-

ernment agencies with respect to his tax liabilities. Such cooperation will include (a) making available to agencies of the Government any and all books, records and information in defendant's possession or under his control which would aid in a final determination of his tax liability; (b) if defendant should choose to pursue his civil remedies, pursuing them with the maximum diligence so that the amount finally due and payable may be speedily determined in an appropriate civil forum; (c) discharging any tax liability so determined fully and promptly after such final determination. In the event that defendant's tax liabilities are discharged prior to the expiration of the period of probation as hereby extended, his probation may then be terminated.

It is so ordered.