**UNITED STATES of America**
**v.**
**Alex QUALLS.**
**Crim. No. 56–326.**

United States District Court
N. D. Illinois, E. D.

Motion Decided Aug. 18, 1959.
Opinion Filed March 16, 1960.

Robert Tieken, U. S. Atty., Chicago, Ill., for plaintiff.

Jack A. Welfeld, Alvin A. Turner, Chicago, Ill., for defendant.

ROBSON, District Judge.

The defendant was indicted on May 24, 1956, for violation of the narcotics laws, specifically Sections 4704(a) and 4705(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 4704(a), 4705(a), and Section 174, Title 21 U.S.C.A., the Narcotic Drugs Import and Export Act. On November 9, 1956, the defendant withdrew his previously entered plea of not guilty and entered a plea of guilty to Counts Two and Three of the indictment charging sale, receipt, concealment, purchase, etc. of heroin. At the same time Count One was dismissed on motion of the Government. On February 7, 1957, defendant was sentenced to three years' imprisonment on his plea and the sentence was suspended and defendant placed on probation for a period of three years.

On August 3, 1959, a Grand Jury impanelled by this court began an inquiry into possible violations of the Federal narcotics laws in this district. On August 6, 1959, this defendant appeared as a witness before the Grand Jury pursuant to subpoena. He was asked eleven questions, nine of which specifically pertained to the particular heroin mentioned in the second and third count of the indictment, the identical 389 grains the indictment charged he had sold to William H. Turnbou, an Agent of the Federal Bureau of Narcotics on May 4, 1956. Qualls refused to answer all of the questions, claiming the privilege against self-incrimination of the Fifth Amendment to the Constitution. Subsequently, the Government filed this petition to revoke the probation to which Qualls had been admitted, and to order the execution of sentence, charging that Qualls had failed to meet the standard of good faith required of a probationer and that he had improperly invoked the protection of the Fifth Amendment before the Grand Jury.

A hearing was held in this court on August 7, 1959, on the Government's petition. At this time the court continued the matter before it and advised the defendant that his probation could be revoked unless he returned to the Grand Jury and answered the questions put to him there and thereby demonstrated that his continued probation was deserved. The court explained that the Fifth Amendment could not properly be invoked in lieu of reply to questions con-

cerning only the matters upon which the defendant had previously been convicted and sentenced upon his plea of guilty. Later that same day, in the presence of defendant and his counsel, the court received a report in open court from counsel for the Grand Jury that the defendant had given answers to some questions put to him before the Grand Jury during the afternoon, but that the Grand Jury's interrogation of him had not been completed. The court then continued the Government's petition for revocation of probation until August 10, 1959, and explained to defendant the importance the court attached to "the matter of cooperating with the court." At this time the defendant replied:

"[T]he way it looks, I think that you should just go ahead and revoke my probation and send me on my way."

The defendant then returned to the Grand Jury, but refused to answer any additional questions. Most of the questions asked during this appearance concerned the heroin on which he had been convicted after his plea, and specifically his source of supply for that heroin. He also refused to tell the Grand Jury whether one of his close personal and business associates was a major distributor of heroin in Chicago. Subsequently, in open court, the defendant rejected an additional opportunity, offered by the court, to return to the Grand Jury and testify.

18 U.S.C. § 3651 [1] and 18 U.S.C. § 3653,[2] set out in pertinent part in the margin, empower the court to grant probation to deserving defendants after conviction in federal criminal cases with certain limitations not pertinent here. The same statutes empower the court to revoke a probation once granted. They place the entire matter within the sound discretion of this court. Roberts v.

United States, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41; Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266; United States v. Rosner, D.C.S.D.N.Y. 1958, 161 F.Supp. 234. An exercise of this court's discretion to revoke a probation is justified when the probationer has engaged in conduct inconsistent with his duty as a probationer. Dillingham v. United States, 5 Cir., 1935, 76 F.2d 35. In such circumstances he has become a "poor probationary risk." Reed v. United States, 9 Cir., 1950, 181 F.2d 141, 142.

Kaplan v. United States, 8 Cir., 1956, 234 F.2d 345, is ample authority supporting the revocation of a probation in circumstances such as these. There, as here, a defendant entered a plea of guilty in a narcotics case and was subsequently asked, before a grand jury, to identify his source of supply for the particular narcotics. He declined to answer. After an appearance before the district court during which he was ordered to answer, Kaplan persisted in his refusal as a result of which he was subsequently held in civil contempt. Here, defendant was not held in contempt, but the Court of Appeals for the Eighth Circuit, in affirming the revocation of probation in that case, stated:

"We have here, then, the situation of a defendant who, while on probation, was specifically ordered by the court to appear before the grand jury and disclose the source of his heroin purchases and who refused in the presence of the court to follow such orders. Completely regardless of the subsequent contempt proceedings, *this was of itself sufficient justification for revoking probation.*" [234 F.2d 345, 347—Italics added.]

Accordingly, the Kaplan case alone is persuasive authority for the revocation in this case.

---

1. "The court may revoke or modify any condition of probation, or may change the period of probation."

2. "As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction

over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, * * * and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."

There are, however, additional reasons for revoking this probation. The court is called upon to make a determination whether this probationer has fully met the standards required and can be considered a good probationary risk at this time. The court is of the opinion that he has not met those standards and that he can no longer be so considered. It is in making this determination that the court must penetrate to the center of the concept of probation. The Court of Appeals for the Seventh Circuit in United States v. Steiner, 7 Cir., 1957, 239 F.2d 660, 662, stated "Judicial discretion is the fabric from which probation is cut and tailored." In that case a defendant convicted of tax violations was admitted to probation on condition that he make effort to pay his taxes and discharge his liability. The court determined that no bona fide effort had been made to meet this condition and revoked the probation. A revocation, of course, need not be based upon the violation of specific terms of the probation. United States v. Kaplan, supra; United States ex rel. Grossberg v. Mulligan, 2 Cir., 1931, 48 F.2d 93.

The determinative question is whether the probationer's conduct has been inconsistent with a bona fide effort to accomplish his own rehabilitation.

In Lopiparo v. United States, 8 Cir., 1954, 216 F.2d 87, certiorari denied 348 U.S. 916, 75 S.Ct. 297, 99 L.Ed. 718, rehearing denied 349 U.S. 969, 75 S.Ct. 879, 99 L.Ed. 1290, defendant, an officer of a corporation was subpoenaed to appear before a grand jury and produce the books and records of the corporation. He appeared without the books, stating that he did not have them, and he asserted the privilege against self-incrimination on questions pertinent to his knowledge of their whereabouts. His commitment for contempt was affirmed because the record showed that his failure to produce the books "lacked a 'modicum of good faith'" 216 F.2d 87, 92. Both Lopiparo and Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed. 2d 415, stand for the proposition that this critical issue of good faith is to be determined by the District Judge in the exercise of his sound discretion as the trier of the fact in contempt cases. The Supreme Court, in the Nilva case, affirmed a contempt conviction based on the trial Court's finding that no adequate excuse existed for defendant's failure to produce corporate books and records pursuant to subpoena. In United States v. Squillante, D.C.S.D.N.Y.1956, 144 F. Supp. 494, the court denied probationer's petition to terminate his probationary period because he had complied with a condition of his probation to discharge his tax liability, stating that probation required an honest effort to reform, which was not indicated by Squillante's activities. Recent activities "of a *suspicious* character" were deemed sufficient basis for a denial of defendant's petition. 144 F.Supp. 494, 495–496. (Italics supplied).

If the Lopiparo and Nilva cases indicate the standard of good faith required of witnesses before courts and grand juries, the Squillante and Steiner cases indicate the standard of good faith required of probationers. In the instant case, defendant has met neither. His improper assertion of the privilege prevented the Grand Jury from obtaining information material to its investigation of the illicit narcotics traffic. There was no bona fide effort to assist the court. There was no honest effort to reform. In fact, the court is convinced that there was steadfast determination by the witness-probationer not to cooperate with the Grand Jury or with the court as indicated by his statement in court on August 10, 1959, set out above. This, along with all the testimony of the defendant contained in the transcripts of his various appearances before the Grand Jury which were admitted in evidence destroys any contention of good faith and leads inevitably to the conclusion that Qualls has become a poor risk for continued probation. Accordingly, the Government's petition is granted, the defendant's probation is revoked, and the defendant stands committed for service of the sentence of three years' imprisonment imposed on February 7, 1957.