[No. C057609. Third Dist. Sept. 8, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MICAH BENJAMIN MINOR, Defendant and Appellant.

## COUNSEL

Robert D. McGhie for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RAYE, J.—In this appeal, we consider the question of how much process is due a probationer in a probation extension proceeding. Defendant appeals an order granting a probation officer's request to extend by two years a three-year period of probation imposed following defendant's no contest plea to unlawful sexual intercourse with a minor. (Pen. Code, § 261.5, subd. (c).)[1] The request was made in a probation progress report to the court, which detailed defendant's failure to make progress in a sex offender therapy program mandated as a condition of probation. Defendant argues that a probationer in an extension proceeding is entitled to the same rights that obtain in a probation revocation proceeding and asserts that his federal due

[1] All further statutory references are to the Penal Code.

process rights of notice, confrontation, and factual findings were violated. We disagree with his initial premise and shall conclude that defendant was provided adequate notice and an opportunity to be heard prior to the extension of his probation, and that his rights of procedural due process were not violated in any respect. We also find adequate support in the record for the court's order extending probation. We affirm.

## I. FACTUAL BACKGROUND

The underlying facts of the offense are only marginally relevant to the issues on appeal. Suffice it to say that based on his interactions with a female acquaintance, defendant was charged with forcible rape (§ 261, subd. (a)(2)), penetration by foreign object by the use of force and violence (§ 289, subd. (a)(1)), and sexual penetration by a foreign object of a victim under the age of 18 years (§ 289, subd. (h)). In August 2004 defendant entered a no contest plea to unlawful sexual intercourse with a minor (§ 261.5, subd. (c)) and was placed on formal probation for 36 months. A condition of his probation required him to "[e]nroll in, pay for and successfully participate in a program of Sex Offender Specific Therapy, including an AIDS education program, as directed by the probation officer, and not terminate participation in said program without the permission of the Court or probation officer." For a variety of reasons, including the inadequacy of one program, a job relocation, and the cancellation or termination of another program, defendant eventually enrolled at various times in four separate programs.

In June 2007 defendant petitioned the court to allow him to attend out-of-state job training and to visit his father. Defendant and his counsel appeared at the hearing on the motion. A probation officer also appeared in court and indicated the probation office had "several objections." The officer reported that "we are having a really difficult time with this defendant getting him to cooperate with probation" and referred to a report prepared by the supervising probation officer, which indicated that defendant had been in three different sex offender treatment groups and would be unable to complete the program before his probation ended in November 2007. The probation officer offered additional information regarding defendant's lack of cooperation in providing information and his progress in his sex offender group, but the court declined to consider it.[2] The court permitted defendant to leave the state but, in light of the information regarding defendant's progress in completing the sex offender program, requested the probation officer to

---

[2] The court declared: "It's not fair for me to get into the middle of this right now because I don't have all of the facts, and, frankly, we're not going to use valuable calendar time to go through memos at this point without counsel meeting and conferring and having a chance to exchange this information. I don't know if Mr. McGhie [(defendant's counsel)] was privy to problems that Ms. Young [(the probation officer)] just indicated . . . ."

prepare a brief report for review and suggested that probation might need to recommend either that probation be extended a year or two to complete sex offender training or revocation of probation.

Thereafter, the probation officer filed a probation progress report requesting the court to extend defendant's probation for two years. The request was not served on defendant prior to an August 29, 2007, hearing. Defendant's counsel objected and the court continued the hearing until September 5, 2007.

Defendant filed a memorandum of points and authorities in opposition to the request to extend the term of his probation in which he denied that he had failed to satisfy all of the court-ordered terms and conditions of his probation. Defendant argued there had been no factual allegations of proof of changed circumstances to justify an extension, and consequently he had been given no notice of the allegations against him. He argued that the probation condition only required him to successfully participate in a program, not complete it, and asserted: "There is also no allegation that the defendant is not successfully participating in the program he is attending or that he cannot continue to do so until November 17, 2007. Thus, there are no factual allegations that, even if proven, would support a finding that the defendant will not be able to comply with his probation obligations until they expire on November 17, 2007." Defendant maintained that he had not violated any of the terms and conditions of his probation, and there were no allegations that he did.

The matter was continued until October 17, 2007, to permit counsel and the court an opportunity to review the progress report and defendant's opposition, and to permit counsel to file further papers with the court. At the October 17 hearing, the probation officer appeared and asked the court to extend probation to the maximum term of five years. She was not sworn as a witness but made the following statement to the court: "Basically because he has failed to get his act together early on. . . . [¶] He's only recently come into compliance with his counseling program and [the] most recent quarterly report that we just received on October 15 says that he is doing well in the program, finally, except for the fact that he, for someone who's been nearly three years into a therapy program, he doesn't have any of the concepts down, he doesn't have any of the skills he should have and he needs time to get this together. So it's basically that he didn't get on it early and we are faced with an untreated sex offender if he doesn't get it situated."

The probation officer's report, dated August 23, 2007, and filed with the court on August 29, 2007, indicates that "the defendant has been enrolled in four separate sex offender treatment programs. After failing to benefit in Dawn Horowitz-Persons [*sic*] Sex Offender Treatment Program he enrolled in Karen Knights Sex Offender Treatment Program on May 18, 2005. Within the

first six (6) months of treatment he came dangerously close to termination due to poor attendance and failing to complete assignments. A progress report dated November 23, 2006, indicated the defendant was struggling in the program. Since August 17, 2006, he failed to turn in eight (8) assignments which significantly delayed his progress." The report notes that on January 24, 2007, the court permitted defendant to relocate, and he later attended treatment for three weeks at the Counseling and Psychotherapy Center in Palmdale, California, before returning to Butte County and enrolling in New Beginnings on March 8, 2007. His initial progress report on April 10, 2007, indicated he was attending treatment unprepared and needed to improve his level of personal responsibility. However, by July 2, 2007, defendant's progress was considered "satisfactory"; "his level of participation had increased and he seemed to be putting more effort into his group." But staff noted "it was unusual for someone who had reportedly been in a treatment program for almost three (3) years to still be at a 'low' level of self discovery and improvement." The report concluded with an expression of concern "that he is still in the beginning stages of his sex offender treatment. The defendant is scheduled to terminate probation on November 17, 2007. He will have only had eight (8) months of treatment, three (3) months of which he lacked participation. The sex offender treatment program could be completed in thirty-six (36) months if the defendant was actively engaged and dedicated to treatment. Upon termination of probation in November the defendant will not have completed his treatment program as ordered by the Court."

Attached to the probation officer's report were three quarterly progress reports reflecting "marginal" assessments on November 23, 2006, and April 10, 2007, followed by apparent improvement in the July 2, 2007, report.

When asked if he wished to be heard, defendant's counsel submitted on his earlier filed memorandum of points and authorities, whereupon the trial court granted the extension "based on everything that's been presented," without further elaboration.

## II. DISCUSSION

■ Probation is the "suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." (§ 1203, subd. (a).) A court may grant probation "for a period of time not exceeding the maximum possible term of the sentence." (§ 1203.1, subd. (a).) "Grant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither 'punishment' [citation] nor a criminal 'judgment' [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citation], and its primary purpose is rehabilitative in

nature [citation]." (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 [68 Cal.Rptr.2d 870, 946 P.2d 828].) " 'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation. [Citations.] The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions. [Citations.] The primary goal of probation is to ensure "[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation." (Pen. Code, § 1202.7.)' (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 [43 Cal.Rptr.2d 681, 899 P.2d 67] . . . .) Accordingly, the Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . .' (Pen. Code, § 1203.1, subd. (j).)" (*People v. Olguin* (2008) 45 Cal.4th 375, 379 [87 Cal.Rptr.3d 199, 198 P.3d 1].)

The parties agree that a court may modify conditions of probation during the probationary period. Section 1203.2 provides, in pertinent part:

"(b) Upon its own motion or upon the petition of the probationer, probation officer or the district attorney of the county in which the probationer is supervised, the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision. The court shall give notice of its motion, and the probation officer or the district attorney shall give notice of his or her petition to the probationer, his or her attorney of record, and the district attorney or the probation officer, as the case may be. The probationer shall give notice of his or her petition to the probation officer and notice of any motion or petition shall be given to the district attorney in all cases. The court shall refer its motion or the petition to the probation officer. After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer upon the grounds set forth in subdivision (a) if the interests of justice so require.

"The notice required by this subdivision may be given tó the probationer upon his or her first court appearance in the proceeding. Upon the agreement by the probationer in writing to the specific terms of a modification or termination of a specific term of probation, any requirement that the probationer make a personal appearance in court for the purpose of a modification or termination shall be waived. Prior to the modification or termination and waiver of appearance, the probationer shall be informed of his or her right to consult with counsel, and if indigent the right to secure court appointed

counsel. If the probationer waives his or her right to counsel a written waiver shall be required. If probationer consults with counsel and thereafter agrees to a modification or termination of the term of probation and waiver of personal appearance, the agreement shall be signed by counsel showing approval for the modification or termination and waiver."

Further, section 1203.3 provides, in pertinent part:

"(b) The exercise of the court's authority in subdivision (a) to revoke, modify, change, or terminate probation is subject to the following:

"(1) Before any sentence or term or condition of probation is modified, a hearing shall be held in open court before the judge. The prosecuting attorney shall be given a two-day written notice and an opportunity to be heard on the matter . . . .

"(A) If the sentence or term or condition of probation is modified pursuant to this section, the judge shall state the reasons for that modification on the record. [¶] . . . [¶]

"(2) No order shall be made without written notice first given by the court or the clerk thereof to the proper probation officer of the intention to revoke, modify, or change its order.

"(3) In all cases, if the court has not seen fit to revoke the order of probation and impose sentence or pronounce judgment, the defendant shall at the end of the term of probation or any extension thereof, be by the court discharged subject to the provisions of these sections."

A.   *Arguments on Appeal*

On appeal, defendant recognizes that the power to modify probation, conferred by section 1203.3, includes the power to extend the probationary term and concedes that the exercise of the power is not dependent on finding a violation of probation. The concession is appropriate. (*People v. Cookson* (1991) 54 Cal.3d 1091, 1100 [2 Cal.Rptr.2d 176, 820 P.2d 278].) In that regard, defendant also acknowledges that failure to complete a program of sex offender treatment could constitute a changed circumstance justifying an extension of probation. This appeal, therefore, is not about the court's authority but about purported procedural defects in the exercise of its authority. Defendant insists that he was entitled to all of the constitutional protections afforded probationers in a probation revocation proceeding, but he received none of them. He was not provided with adequate notice or the opportunity to confront and cross-examine his accusers. These procedural

defects rendered the consideration of hearsay declarations improper, and thus the court's order is without an evidentiary basis.

*Notice*

Citing *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] *(Morrissey)* and related cases involving revocation of probation, defendant argues that he was deprived of his constitutional right to procedural due process. More particularly, defendant complains that despite his objection in the trial court to the lack of adequate notice, no formal motion or petition to extend probation was ever filed and served. The probation progress report was an inadequate substitute because it failed to set forth facts constituting changed circumstances sufficient to justify an extension of defendant's probation. Defendant reviews the contents of the probation officer's report and offers the following litany of the report's deficiencies.

1. The statement that he had been enrolled in four separate programs was not supported by facts demonstrating how this constitutes a change of circumstance.

2. The absence of facts supporting the allegation that he failed to benefit from the Dawn Horwitz-Person program or to demonstrate how this constituted a changed circumstance.

3. The failure to allege facts supporting the claim that within the first six months he came dangerously close to termination due to poor attendance and failing to complete assignments and to demonstrate that coming dangerously close to termination in the first six months constituted or could constitute a changed circumstance sufficient to extend his probation nearly two and one-half years later.

4. The failure to allege facts supporting a statement in a progress report indicating that defendant was struggling or to demonstrate that struggling constituted a change of circumstance.

5. The report's reference to his failure to turn in eight assignments indicated he was given until December 21, 2006, to turn in the assignments but failed to disclose whether he did so and failed to identify "just what facts the People intended to rely upon to prove that failing to turn in eight assignments in a timely manner significantly delayed his progress or constituted a changed circumstance."

6. The probation officer's report refers to defendant's relocation to Palmdale but makes no attempt to explain how temporarily relocating for a short period

could possibly be a changed circumstance and fails to identify facts that would show such a move is a changed circumstance.

7. An observation in the probation officer's report that defendant was attending the New Beginnings program unprepared and needed to improve his level of personal responsibility did not disclose the facts on which the People would rely "to prove that [defendant] was attending unprepared, what was his level of personal responsibility and that it needed to improve."

8. The same objection is made to an observation in the progress report from New Beginnings that it was unusual for someone who had reportedly been in a treatment program for almost three years to still be at a low level of self-discovery and improvement. The report fails to explain what "self-discovery" and "improvement" are, how they are measured, and defendant's level of both qualities.

*Confrontation*

Defendant did not seek to testify or call witnesses on his own behalf. He relies on *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*) and California cases dealing with the use of hearsay testimony in parole revocation proceedings (*People v. Winson* (1981) 29 Cal.3d 711 [175 Cal.Rptr. 621, 631 P.2d 55]; *People v. Arreola* (1994) 7 Cal.4th 1144 [31 Cal.Rptr.2d 631, 875 P.2d 736]; *People v. Shepherd* (2007) 151 Cal.App.4th 1193 [60 Cal.Rptr.3d 616]) as the basis for asserting that he was denied his right to confront and cross-examine the witnesses against him. Claiming the probation officer's unsworn statements and the officer's written report and attachments were not competent evidence, defendant maintains the record is completely bereft of any evidence to support the order extending probation.

*Failure to Make Factual Findings*

Again relying on cases involving probation revocation (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 786 [36 L.Ed.2d 656, 93 S.Ct. 1756] (*Gagnon*); *Black v. Romano* (1985) 471 U.S. 606, 611–612 [105 S.Ct. 2254, 85 L.Ed.2d 636] (*Black*)), defendant argues the trial court was required to make specific factual findings and state reasons in writing for extending probation. While acknowledging that a reporter's transcript of oral proceedings satisfies the writing requirement, defendant rejects the adequacy of the court's oral pronouncement "[t]hat based on everything that's been presented, I'm inclined to grant the request" as a statement of findings and reasons.

B. *Analysis*

Before considering the specific claims made by defendant, we first review decisional law on due process and probation proceedings generally, including cases cited by the parties and, in the absence of California cases directly on point, decisions from other jurisdictions on the due process rights of probationers in probation extension proceedings.

Defendant relies on the seminal case of *Morrissey, supra,* 408 U.S. 471, establishing that minimal due process protections must be extended to defendants in parole revocation proceedings; the subsequently decided case of *Gagnon, supra,* 411 U.S. 778, extending the same protections to probation revocation proceedings;[3] and several California appellate court decisions applying these United States Supreme Court decisions to probation revocation proceedings under the Penal Code.

■ In *Morrissey,* the court began its consideration of the issues before it by noting that parole revocation "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." (*Morrissey, supra,* 408 U.S. at p. 480.) The question was whether this conditional liberty interest fell within the contemplation of the "liberty or property" language of the Fourteenth Amendment to the United States Constitution. The test as to "[w]hether any procedural protections are due," according to the Supreme Court, "depends on the extent to which an individual will be 'condemned to suffer grievous loss [of liberty].' [Citation.]" (*Morrissey,* at p. 481.) Because a parolee's conditional liberty "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee," the court held that a parolee's conditional liberty comes within the protections of the Fourteenth Amendment and cannot be revoked without due process. (*Morrissey,* at p. 482.)

"Turning to the question what process is due" (*Morrissey, supra,* 408 U.S. at p. 483), the court declared that in light of the conditional nature of a parolee's liberty it would not extend the same procedural protections to parole violators as to criminal defendants. "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." (*Id.* at p. 480.) "What is needed," the court concluded, "is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed

---

[3] Defendant also cites *Black, supra,* 471 U.S. 606, a case rejecting the argument that due process requires a sentencing court to indicate that it considered alternatives to incarceration before revoking probation.

by an accurate knowledge of the parolee's behavior." (*Id.* at p. 484.) The court declined to identify specific procedures for revoking parole, leaving to the individual states the task of devising parole revocation procedures. (*Id.* at p. 488.) This same reasoning was applied to probationers in *Gagnon, supra*, 411 U.S. 778.

■ California decisions also make clear that parole revocation procedures are not required to mirror those of a criminal trial. Echoing *Morrissey*, the decisions hold that "[r]evocation of probation is not part of a criminal prosecution, and therefore the full panoply of rights due in a criminal trial does not apply to probation revocations. [Citation.] 'In placing a criminal on probation, an act of clemency and grace [citation], the state takes a risk that the probationer may commit additional antisocial acts,' and 'the state has a great interest in being able to imprison the probationer [for probation violations] without the burden of a new adversary criminal trial. [Citation.]' [Citation.]" (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 72 [87 Cal.Rptr.3d 643].)

*Morrissey* and related decisions involve the rights of probationers in probation and parole revocation proceedings. Courts have taken a more restrictive view of the procedural due process rights of probationers facing an extension of their probationary period. The majority of courts considering the issue have declined to apply the principles of *Morrissey* and *Gagnon* to probation extension proceedings.

Thus, in *Skipworth v. U.S.* (3d Cir. 1975) 508 F.2d 598 (*Skipworth*), a case decided after *Morrissey* and *Gagnon*, the federal Third Circuit Court of Appeals reviewed the case of a probationer whose probation period was extended ex parte for another year only five days prior to its scheduled expiration. The district court judge granted the ex parte extension on the recommendation of the probation office. Later, the court revoked the probationer's probation based on conduct that occurred during the extension. (*Skipworth*, at p. 599.)

■ The probationer argued the extension, granted without notice, was invalid in light of the principles articulated in *Morrissey* and *Gagnon*. The Court of Appeals explored the "novel question" (*Skipworth, supra*, 508 F.2d at p. 600) of whether the due process clause requires that a probationer be afforded due process before an extension of probation is ordered, and concluded: "After careful consideration of the principles set forth in *Morrissey* and *Gagnon* and their applicability to this case, we do not believe that due process required notice and a hearing prior to the extension of the petitioner's probation. While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as 'grievous' a

'loss' as revocation, and here it entailed no greater restrictions than those which existed previously. In fact, the primary 'loss' suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely [a] potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur." (508 F.2d at pp. 601–602.) Though not constitutionally required, the court did, as a standard of practice within the Third Circuit, require notice of any proposal to extend probation, and did provide counsel and a hearing. (*Id.* at pp. 602–603.)[4]

Not only is the liberty issue at stake in an extension proceeding different in degree from that involved in revocation of probation, the nature of the factual inquiry also differs. Thus, the court noted that "the kind of factual inquiry in an extension proceeding is quite different from that in a revocation proceeding. In revocation proceedings, the trial judge must reasonably satisfy himself that the probationer has broken some law while on probation or has otherwise violated a condition of his probation. While the judge has considerable discretion as to whether to order revocation, he must at a minimum make an initial factual finding of a probation violation. A revocation hearing, therefore, provides the probationer with the crucial opportunity to contest an allegation of violation. [¶] In granting an extension, however, the trial judge is given greater latitude, and he need not find that any probation violation has occurred." (*Skipworth, supra,* 508 F.2d at p. 602.)

The approach taken by the court in *Skipworth* has been applied in later federal cases. (See *U.S. v. Carey* (8th Cir. 1977) 565 F.2d 545, 547 ["[A] mere noncustodial period of supervision to a term within the statutory limits [does not] implicate[] a liberty interest sufficient to require a pre-extension hearing as a constitutionally commanded right."]; *U.S. v. Cornwell* (5th Cir. 1980) 625 F.2d 686, 688 ["[E]xtension of 'a non-custodial period of supervision to a term within the statutory limits [does not] implicate a liberty interest sufficient to require a preextension hearing as a constitutionally commanded right.' "], quoting *Skipworth, supra,* 508 F.2d at pp. 601–602; *Forgues v. U.S.* (6th Cir. 1980) 636 F.2d 1125, 1127 ["Probation . . . is a non-custodial supervisory period far less onerous to the probationer than the incarceration which results from the revocation of probation . . . . [¶] '. . . [E]xtension of "a non-custodial period of supervision to a term within the statutory limits (does not) implicate a liberty interest sufficient to require a preextension hearing as a constitutionally commanded right." ' "]; *U.S. v. Silver* (9th Cir. 1996) 83 F.3d 289, 292 [holding probation extension does not result in "a liberty interest

---

[4] We note the probationer in *Skipworth*, though not afforded notice and a hearing, was represented by counsel.

[being] so infringed as to require this court to call for additional protections as per the Due Process Clause"].)

While our research has not disclosed a California case on point, cases in other state courts generally adhere to the *Skipworth* reasoning. (*State v. Zeiszler* (1984) 19 Ohio App.3d 138, 141 [483 N.E.2d 493] [due process procedures required in probation revocation hearings did not need to be strictly complied with in cases involving extensions or modifications of probation, especially extensions that confine the total period of probation to a term of less than five years, the allowable time for a probation period under state law]; *People v. Conner* (Colo.Ct.App. 2006) 148 P.3d 235 [rejecting the argument that the due process protections afforded in a probation revocation hearing should also apply to the extension of probation]; *Andrews v. State* (Mo.Ct.App. 2009) 282 S.W.3d 372 [due process does not require a hearing before probation extended, applying Mo. Supreme Court's holding in *Ockel v. Riley* (Mo. 1976) 541 S.W.2d 535 (court could rely on probation officer's case summary report alleging that probationer had prior probation violations and was still in the process of finishing his substance abuse treatment programs, and could properly find that although probationer had made some progress, it was still in the best interest of society that he remain on probation)]; *State v. Hardwick* (1988) 144 Wis.2d 54 [422 N.W.2d 922] [extension of probation, unlike revocation, does not pose a "grievous loss" of liberty and thus court could properly extend probation after hearing from probationer and probation officer, though probationer was not afforded counsel]; *Ex parte Harrington* (Tex.App. 1994) 883 S.W.2d 396 [due process did not require written notice or formal hearing prior to extension of probation]; *People v. Hotle* (Colo.Ct.App. 2008) 216 P.3d 68 [rejecting claim that an extension or modification of probation is analogous to a probation revocation proceeding; due process does not require that a defendant be advised of, or receive, counsel before requesting an extension of probation and waiving a hearing]; *State v. McDonald* (2001) 272 Kan. 222, 228–229 [32 P.3d 1167, 1172] [just as there is no due process right to a hearing for probation extension, counsel is not constitutionally required to be present when term of probation is extended]; *State v. Campbell* (1981) 95 Wn.2d 954, 958 [632 P.2d 517, 520] [although ex parte extension proceedings are inadvisable, they are not violative of due process].)

■ Thus, the weight of federal and state authority holds that the procedural due process protections applied by the Supreme Court in *Morrissey*, *Gagnon*, and *Black* to parole and probation revocation proceedings do not apply to probation extension proceedings. Nonetheless, we recognize the issue is not beyond debate. There is no doubt, as *Skipworth* notes, that the liberty interest implicated by revocation of probation is far greater than that involved when probation is merely extended. (*Skipworth, supra*, 508 F.2d at pp. 601–602.) Still, restrictions imposed by the conditions of probation are

not insignificant. Minimal due process rights of notice and a right to be heard should apply, and indeed, irrespective of federal due process requirements, California provides for both such rights by statute. (§ 1203.2, subd. (b).)[5] Utah imposes a similar statutory requirement and also requires the probationer to have violated terms of probation. (See *State v. Orr* (2005) 2005 UT 92 [127 P.3d 1213].) Though the majority rule is clearly to the contrary, it can be plausibly argued that minimal rights of procedural due process should apply to extension proceedings. Indeed, the Supreme Court of Arizona has so concluded. (*State v. Korzuch* (1996) 186 Ariz. 190 [920 P.2d 312].)

The issue for us, however, is not whether conditions of probation so restrict individual liberty that prior notice and hearing is required before probation can be extended; our Legislature has resolved that issue in a statute that sets forth in relative detail defendant's right to notice and hearing. (§ 1203.2, subd. (b).) *Skipworth* and the crush of cases holding that federal procedural due process rights of notice and hearing do not apply to probation extension hearings are not a bar to defendant's notice and hearing claim. Rather, *Skipworth*'s significance to the present case lies in its implicit rejection of defendant's claim that federal due process protections afford him a right of cross-examination and prohibit reliance on hearsay in the hearing afforded by California law.[6] If there is no constitutional right to notice and hearing in the first instance, it is difficult to conceive of a constitutional obligation to consider only the testimony of sworn witnesses or a constitutional right of cross-examination, let alone notice of the type urged by defendant.

The essence of procedural due process is notice and an opportunity to respond (*Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 546 [84 L.Ed.2d 494, 105 S.Ct. 1487]), and clearly, defendant was afforded those rights. Though he complains about the form and clarity of the notice

---

[5] Defendant cannot plausibly claim that the notice provided here did not meet the minimal requirements of notice and hearing provided by section 1203.2, subdivision (b). We will conclude that the notice also comported with the higher standards of notice imposed by *Morrissey* and *Gagnon* in revocation proceedings.

[6] Nonetheless, defendant argues *Skipworth* rests on a very shaky foundation in light of the decision's reference to outdated cases and repealed statutes. Defendant notes in particular that *Skipworth* cites to *U.S. v. Squillante* (S.D.N.Y. 1956) 144 F.Supp. 494 for the proposition that federal judges had broad powers to extend probation expressly granted by statute (18 U.S.C. former § 3651); however, this statutory authority has been repealed and always stood in stark contrast to Penal Code section 1203.2 in this state, which requires a change of circumstances. While we applaud his legal scholarship, defendant's efforts to discredit *Skipworth* are unavailing. Though the statutory underpinnings of *Skipworth* are not the same as the present case, the constitutional considerations are. *Skipworth*'s holding is cited with approval under various state statutory schemes, and there is no indication that the subsequent repeal of the federal statute cited in *Squillante* has affected the persuasiveness of *Skipworth*'s constitutional analysis. The decision continues to be cited with approval. (See, e.g., *Andrews v. State, supra*, 282 S.W.3d 372, 379–381; *People v. Hotle, supra*, 216 P.3d 68, 70.)

received, he was informed of the allegations against him and had the opportunity to respond. This information was contained in a "Probation Progress Report" filed August 29, 2007, recommending that the court extend his probation by two years. The report set forth the basis for the recommendation: his lack of progress in sex offender treatment programs required as a condition of probation. Because defendant had not been served with a copy of the report, the court postponed the hearing on the extension proposal to September 5 and then delayed the matter again to October 17 to permit consideration of the progress report and defendant's memorandum of points and authorities in opposition.

Defendant's due process claims as to notice devolve into quibbles over details. Defendant parses each sentence of the probation progress report and asserts a lack of factual detail or a failure to explain why the statement supports a finding of changed circumstances. Defendant would apply to the report standards applied to judicial pleadings. However, defendant was not charged with a crime. The question of defendant's progress in sex offender treatment requires an evaluation of his actions and attitudes, and not simply proof of discrete facts as would be involved in a criminal action or even revocation proceedings. Revocation of probation was not sought, only an extension of probation to permit additional time for the treatment program to have its desired effect.

Thus, the People were not required to prove defendant's "level of personal responsibility" or "level of self discovery," or to explain why the failure to timely turn in eight assignments constitutes a changed circumstance. These were only circumstances that, in association with other circumstances, supported the assessment of treatment personnel that defendant had not made the progress anticipated when sex offender treatment was ordered as a condition of probation. As a consequence, a treatment program that was originally projected to require three years would instead require five. This failure was attributed by the probation officer and program personnel to a number of factors, including poor attendance, failure to complete assignments on time, attitude problems, and shifting between programs. Defendant could certainly disagree with the assessment of his progress in sex offender treatment, but he cannot plausibly claim that the probation progress report did not provide him with constitutionally adequate notice of the proposal to extend his probation and the basis for it.

*Confrontation and Cross-examination*

Though he was provided the "essence of procedural due process," and though he was represented by counsel at the extension hearing, defendant insists that he was entitled to more. He complains that he was denied the

right to confront and cross-examine his accusers because the probation officer was not sworn and subject to cross-examination, nor were the sex offender treatment personnel whose observations formed the basis for the probation officer's report. In defendant's view, the court's order was without competent evidentiary support.

■ Because suspension and revocation proceedings are not "criminal prosecutions," the Sixth Amendment confrontation clause ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." (U.S. Const., 6th Amend.)) does not apply to either proceeding. *Crawford, supra,* 541 U.S. 36, cited by defendant, is simply inapposite. Confrontation is an element of due process, but as we shall explain, the type of confrontation defendant seeks, with exclusion of hearsay, strict adherence to rules of evidence, and cross-examination, is not compelled in a probation extension proceeding.

■ "Once it is determined that [the guarantee of] due process applies, the question remains what process is due." (*Morrissey, supra,* 408 U.S. at p. 481.) The quantum and quality of due process required under specific circumstances varies. Even in revocation proceedings, a defendant is not entitled to the full range of due process rights associated with a criminal trial. Due process requires only that the revocation proceedings be conducted in a fundamentally fair manner. In *Gagnon*, the court emphasized that in parole revocation proceedings it "did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." (*Gagnon, supra,* 411 U.S. at p. 782, fn. 5.) More generally, "The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. Consequently, due process is a flexible concept, as the characteristic of elasticity is required in order to tailor the process to the particular need. [Citations.] Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination. [Citation.] 'What due process does require is notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections. [Citation.] " 'Due process' is an elusive concept. Its exact bound-aries are undefinable, and its content varies according to specific factual contexts." [Citation.] The extent to which due process protections are available depends on a careful balancing of the interests at stake. . . .' [Citation.]" (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1069–1072 [114 Cal.Rptr.2d 798].)

Our Supreme Court has " 'identified four relevant factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official. . . .' [Citation.]" (*People v. Allen* (2008) 44 Cal.4th 843, 862–863 [80 Cal.Rptr.3d 183, 187 P.3d 1018], citation omitted.)

As discussed above, the majority of courts that have considered the question downplay the private interests at stake in the extension of probation, reasoning that probation does not impose a significant burden. As we have suggested, the burden is significant enough to warrant the safeguard of notice and hearing. Defendant was subject to restrictions that addressed the nature of the offense to which he pled no contest. Apart from successful participation in sex offender therapy, the specific conditions of probation imposed on defendant were few in number. He was subject to search for the purpose of determining compliance with the conditions of probation. He could not associate with persons under the age of 18 years except in the presence of a responsible adult approved by the probation officer. He could not cohabitate with any person who had the care and custody of minors. He could not be involved in activities with children or frequent places where children are found except in the immediate presence of a responsible adult approved by his probation officer. He could not own or possess materials suggesting or involving child nudity or sex. He was also subject to a no contact order with respect to the victim in the case, could not drive without a valid California driver's license and proof of insurance, and was subject to a variety of general reporting requirements and restrictions on out-of-state travel. Still, defendant was largely free to conduct his daily affairs without restriction. As observed by the court in *Skipworth, supra,* 508 F.2d 598, the primary "loss" suffered by defendant lay "not in the continuing restrictions themselves, but in the possibility of future revocation" (*id.* at p. 601),[7] at which point he would be entitled to the more extensive due process protections afforded in revocation proceedings.

■ The government's interest is clear. The state risks the safety of the public when it releases a convicted criminal on probation rather than confining him in an institution. In order to mitigate the risk, probation is offered

---

[7] We note that defendant sought a stay, pending resolution of the appeal, of the probation condition requiring him to participate in a sex offender treatment program. The request was denied. It appears that defendant successfully completed probation.

with strings attached. The defendant agrees to specified restrictions and to participate in rehabilitation programs designed to prevent a recurrence of criminal behavior. The government has an interest in assuring the success of rehabilitation efforts by extending the duration of probation if a defendant fails to make reasonable progress in a mandated rehabilitation program. The state also has an interest in determining whether an extension is justified without the burden of extended trials that would tax limited judicial resources and divert probation officers and treatment personnel from their primary rehabilitative functions.

As for the risk of error, extension of probation does not entail as grievous a loss as that at stake in revocation proceedings, and thus the consequences of error are far less. Moreover, "the kind of factual inquiry in an extension proceeding is quite different from that in a revocation proceeding." (*Skipworth, supra*, 508 F.2d at p. 602.) In revocation proceedings, the court must find that the defendant has committed another crime while on probation or has otherwise violated a condition of his probation, conduct that can serve as the basis for arrest and confinement pending probation revocation. The facts required to extend the period of probation are neither so weighty nor as consequential. In summary, the court was provided with statements from defendant's probation officer and sex offender treatment personnel to the effect that as the end of his probationary period approached, he had not gotten the skill and concepts of the program and was basically an untreated sex offender. Though he had recently come into compliance and was doing well, an extension of probation was necessary to permit his completion of the program.

Defendant was not required to accept this evaluation of his performance. But the risk that the court would make an erroneous decision in relying on the written reports, without their formal introduction into evidence, instead of requiring sworn testimony from the probation officer and treatment personnel, subject to cross-examination as to the bases for their opinions, is not great. As the Attorney General points out, the progress and treatment reports are the type of reliable hearsay that traditionally has been admissible at probation revocation proceedings. (*People v. O'Connell* (2003) 107 Cal.App.4th 1062 [132 Cal.Rptr.2d 665].) In *O'Connell*, a simple progress report from a drug counselor as to the defendant's failure to attend drug counseling was used to support the court's decision to terminate the defendant from a deferred entry of judgment program. The court noted that "such reports were routinely received without undertaking the added burden of calling the author to authenticate it because the reports were prepared in response to a referral from the court." (*Id.* at p. 1067.) Here, the reports were prepared in accordance with section 1203.2, subdivision (b), which requires

the court to "read and consider" the report before acting to modify probation. The requirement is not conditioned on formal admission of the reports into evidence.

Finally, as to the fourth factor, defendant was informed of the nature, grounds, and consequences of the action and had the opportunity to present his side of the story to the court. The procedure thus afforded him the dignitary interest in informing him of the nature, grounds, and consequences of the action and enabled him to present his side of the story before a responsible government official.

After reviewing all the relevant considerations, we conclude defendant was accorded adequate procedural due process in the consideration of the proposal to extend his probation.

Finally, we consider defendant's assertion that the court failed to make specific factual findings, either in writing or on the record. Like defendant's other due process assertions, the argument on findings is based on the premise that probationers in extension proceedings are entitled to the same due process protections accorded probationers in revocation proceedings. As already discussed, we reject this proposition. Section 1203.3 requires that "[i]f the sentence or term or condition of probation is modified pursuant to this section, the judge shall state the reasons for that modification on the record." (§ 1203.3, subd. (b)(1)(A).) Here, the reasons for the extension were concisely and clearly set forth in the probation progress report and the statement of the probation officer in open court. The trial court's statement that "based on everything that's been presented, I'm inclined to grant the request" was an adequate statement of reasons.[8]

---

[8] In his petition for rehearing, defendant insists that we are obliged "to provide needed guidance of just what is required with regard to [a] request to extend probation." But we are not the Legislature. Our task is not to write guidelines on the extension of probation but to decide individual cases based on the facts presented to us. Here, we conclude that, consonant with sections 1203.2, subdivision (b) and 1203.3, defendant was provided notice and a hearing before his probationary period was extended. A probation progress report provided notice of the request for the proposed extension of probation and the basis for the request. The court also received information at the hearing from a probation officer. The court provided defendant's counsel with an opportunity to be heard, but he declined and made no request to call witnesses. Referring to the information provided by the probation officer and contained in the probation progress report, the court granted the request, an implicit finding that the probation office had met its burden of establishing grounds for modification of probation. We reject defendant's argument that an extension of probation must in every instance be preceded by a formal pleading and the sworn testimony of witnesses who are called and made subject to cross-examination. Neither sections 1203.2 and 1203.3, nor the Constitution, require such. Because defendant was accorded notice and a hearing prior to the expiration of his probation, we have no occasion to consider whether the notice and hearing requirements can be met by notice and hearing after the expiration of probation.

## DISPOSITION

The order extending probation is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied October 8, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 21, 2010, S187402. George, C. J., and Werdegar, J., did not participate therein.